Page 1

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

Judge Erik P. Kimball

In Re:

Case No. 14-10183-BKC-EPK

JEFFREY ROY BROOKS,

    Debtor.

_____

DE #12

February 6, 2014

The above entitled cause came on for hearing before the HONORABLE ERIK P. KIMBALL, one of the Judges in the UNITED STATES BANKRUPTCY COURT, in and for the SOUTHERN DISTRICT OF FLORIDA, at 1515 North Flagler Drive, West Palm Beach, Palm Beach County, Florida, on February 6, 2014, commencing on or about 1:30 p.m., and the following proceedings were had:

Transcribed from an audio recording by:
Jacquelyn Ann Jones, Court Reporter

```
 1    APPEARANCES:
 2
 3
      OFFICE OF THE U.S. TRUSTEE
 4    By: HEIDI FEINMAN, ESQUIRE
 5
 6    DAVID M. GOLDSTEIN
      By: DAVID GOLDSTEIN, ESQUIRE
 7    On behalf of the Debtor
 8
      Also appearing:
 9
      Richard Levitt (telephonic)
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1      THE COURT: Jeffrey Roy Brooks. Do I have
2 Ms. Feinman on the telephone?
3      MS. FEINMAN: Yes, Your Honor. Good
4 afternoon. Heidi Feinman for the U.S. Trustee.
5      MR. LEVITT: Judge, Richard Levitt. I'm one
6 of the creditors.
7      THE COURT: Good afternoon.
8      MR. GOLDSTEIN: Good afternoon, Your Honor.
9 David Goldstein on behalf of the debtor.
10      THE COURT: Very good. So I have a motion
11 from the United States Trustee. Ms. Feinman.
12      MS. FEINMAN: Yes, Your Honor. I'm just --
13 let me start from the very beginning. What I did,
14 Your Honor, is, I went through, as of this morning,
15 let me just say, as of this afternoon, the debtor did
16 file an amended Schedule D and E, and did file some
17 periodic financial reports, the official Form 26.
18      Schedules -- the orig -- the schedules plus
19 the amendments show as follows: That there are no
20 bank accounts and no wearing apparel listed. We
21 talked about that last week.
22      Schedule B, number 7, shows a watch valued
23 at $3,000. It does not disclose the type of watch,
24 what the brand is. I'm not sure whether it's a
25 valuable watch that needs to be insured. I think

1   $3,000 is an expensive watch.
2           Number 25 on Schedule B lists a 2004
3   Mercedes CLK 500 with a value of a hundred thousand
4   dollars.  I do believe that Mr. Goldstein stated last
5   week that he thought that that was an error in the
6   valuation, but that has not been amended.
7           The insurance that was provided to the U.S.
8   Trustee says the car is located in a zip code location
9   of 11568, which is Westbury, New York.  I'm not sure
10  why, if the debtor lives down here, that the car is up
11  there.
12          The U.S. Trustee is not listed as a notice
13  holder for insurance purposes.  If the insurance
14  expires for any reason, we will never get notice of it
15  at this point.
16          I also did a Kelly Blue Book value on the
17  car, and it looks like it should be at a maximum value
18  of $12,000.  Needless to say, the schedules have not
19  been amended to correct that value.
20          B13, Number 13 on Schedule B, lists -- the
21  debtor lists stock, interest, ownership, with a value
22  of $200,000 in the following entities.  Bulletproof
23  Parts, Inc., JB Partners, Farm Controlled, Jeffrey
24  Brook, Inc., and an entity called Laketa, L-a-k-e-t-a,
25  Nylon, N-y-l-o-n, Product, P-r-o-d.  The schedules do

1   not list the amount of the ownership interest in each
2   entity, and does not provide an individual value for
3   each ownership.
4           I raise that, Your Honor, because the case
5   management summary, which is docket entry 19, only
6   lists two entities that the debtor has an ownership
7   in, Bulletproof Enterprises, Inc. and Farm
8   Consultants, Inc.  Neither of those are listed on the
9   schedules, and those entities that are listed on the
10  schedules are not listed on the case management
11  summary.
12          In addition, Your Honor, I happened to do a
13  little bit of background, and I looked on SunBiz,
14  which is the Florida Corporate recording site, there's
15  another entity -- there are several -- there are two
16  more entities that it appears that the debtor may have
17  an interest in.  An entity called D.T.Z. Industries,
18  Inc.  The debtor is listed as a registered agent and a
19  director treasurer, and an entity called Vianel
20  Industries, spelled V-i-a-n-e-l.  The debtor is listed
21  as the vice president.  Those are not listed on the
22  schedules.
23          Additionally, the 2012 Federal Income Tax
24  Return that the debtor is required to provide to the
25  U.S. Trustee, only lists the following entities that

1  the debtor has interest in.  JP Partners -- or JB
2  Partners, LP, which is on Schedule B, Jeffrey Brooks,
3  Inc., which is on Schedule B, and Bulletproof
4  Enterprises, Inc., which is on the case management
5  summary, as I stated before, but not on Schedule B.
6        The tax return, in addition, Your Honor,
7  this is something that's not disclosed on Schedule B,
8  the 2012 tax return shows that there is money -- that
9  the debtor holds money in Canada in an entity called
10 Woodbine Ent. Group, E-n-t. Group.  The maximum amount
11 of money in that -- that was held in that foreign
12 entity, it's a Canadian entity, it was 813,000.  That
13 was at the end of 2012.  And that the debtor had money
14 located in a bank in Israel called Bank Hapoalim,
15 H-a-p-o-a-l-i-m.
16        The tax return also says that the debtor
17 owns 13 horses.  There are no horses listed on
18 Schedule B.  And I raise that again, because the case
19 management summary says that the debtor owns 30
20 horses.  Again, no horses are listed on Schedule B.
21        The case management summary also says that
22 the debtor leases property in Oley, Pennsylvania,
23 O-l-e-y.  Schedule G does -- schedule G does not show
24 any lease of any property.
25        The debtor did file an amendment today,

1  Schedule D and E, and that was an issue that was
2  raised last week in which last week we noticed that
3  Schedule E had a priority claim owed to the debtor by
4  the debtor for five million dollars.  And I believe
5  Mr. Goldstein indicated that that was an error and it
6  was owed to another person.
7       So the amendment today, that was filed
8  today, and that is court paper 30, Your Honor, puts
9  that debt, secure debt correctly in Schedule D.  It
10 shows that the amount is owed to a Terry Brooks,
11 T-e-r-r-y, Brooks in Westbury, New York, and it says
12 the date of the claim was February, 2010.  It does not
13 include a nature of a lien or a description on value
14 of the property subject to the lien.  So there's not
15 adequate disclosure of that.
16      Your Honor, furthermore, let's look at the
17 statement of financial affairs, and those were
18 recently filed as well.  That's docket entry 28.
19 Questions 1 and 2 show no income disclosed in the last
20 three years.  The two tax returns that were required
21 to be sent to the U.S. Trustee, which were the 2011
22 and 2012 tax returns, state otherwise.
23      The 2011 tax return shows an IRA
24 distribution of over 1.1 million, and the 2012 tax
25 return shows an IRA distribution of approximately

1   150,000.  I raise that, Your Honor, because number 1,
2   the questions are not answered correctly, and number
3   2, if the debtor has IRAs, they're not listed on
4   Schedule B.
5           Question 9 of the Statement of Financial
6   Affairs shows that the payment to the attorney, Mr.
7   Goldstein, of -- in the amount of $1500, from Farm
8   Consultants.  Your Honor, that entity is listed on the
9   case management summary.  It is not listed on Schedule
10  B, as I stated before.  I don't know what that entity
11  is.  Although I do believe that the periodic financial
12  report now shows some information on Farm Consultant
13  and says that the debtor has a hundred percent
14  interest on it.
15          Additionally, just as an aside, the
16  application to employ counsel, which is set for
17  hearing next week, doesn't disclose the source or
18  amount of any retainer that was paid to Mr. Goldstein.
19          Question 11 says, of the Statement of
20  Financial Affairs, says there's a closed account at
21  Lantern Investments.  No date is given when that
22  account was closed, and it's only an approximate
23  amount that is given.  It says approximately 20,000.
24          Question 18, businesses in which the debtor
25  was an officer, director, owner of five percent or

1  more interest in the last six years.  There are --
2  there is something that is listed, but there's no
3  name.  The ID number that is listed is actually the
4  debtor's social security number, which should not have
5  been disclosed, that is personally identifiable
6  information.  If anything, if it was a corporate
7  entity, which, there should be several, as I've
8  indicated already in my argument, those tax ID numbers
9  should be there.  And again, this is just -- doesn't
10 have any information whatsoever.
11          Question 20 says that there is an inventory,
12 that there's someone who has a scheduled inventory
13 with a value of $20,000.  Again, Schedule B does not
14 show any inventory, and I don't know what that
15 inventory entails.
16          Question 21.  Question 21 was completed.  It
17 says the debtor has a hundred percent interest.  The
18 debtor is not a corporate entity.  The debtor is an
19 individual.  I don't know -- I can't even answer that
20 question.
21          Your Honor, there's other information that
22 the U.S. Trustee believes has not been disclosed.  For
23 example, the 2011 tax return has K-1s showing income
24 from entities called Fortress Investment Group, LLC,
25 Quick Silver Gas Services, LP, and Majestic Research

1  Holdings.  If the debtor still has an interest in
2  these entities, they should be disclosed on Schedule B
3  and the Statement of Financial Affairs, Question 18.
4  At a minimum, they should be on the question 18 of the
5  Statement of Financial Affairs even if the debtor no
6  longer has an interest.
7         And again, as I indicated before, the tax
8  return shows, foreign financial investments.  If they
9  were closed in 2013, that information should be on
10 question 11 of the Statement of Financial Affairs.  If
11 there's still an account open, there should be on
12 Schedule B.
13        And finally, Your Honor, the 2011 tax
14 return, with respect to these financial, foreign
15 financial investments, the debtor invoked his Fifth
16 Amendment privilege with respect to the disclosure of
17 this additional information.
18        Now, I understand that the Court does not
19 have this information before it.  This is information
20 that would be brought forth in an evidentiary hearing,
21 because I would have to give it to the Court to
22 review, but the bottom line is, Your Honor, there's
23 significant nondisclosure just between the schedules
24 and the statement of financial affairs and the
25 debtor's case management summary.  These are the three

1  things that need to be filed with the Court.  None of
2  them have accurate information.  And the U.S. Trustee
3  believes that none of that information is accurate at
4  all, and that this Court doesn't have a truthful and
5  honest debtor.
6             Your Honor, if the Court would like to have
7  an evidentiary hearing on this, the U.S. Trustee is
8  happy to do that.  The 341 is scheduled for Tuesday.
9             But I believe, Your Honor, on the basis of
10 what's been filed with the Court to date, it's clear
11 that the debtor has not been an honest debtor and has
12 not complied with the requirement to disclose all
13 their income, all their assets, and all their debt.
14            And for that reason, I, rather than have
15 this case dismissed, Your Honor, I would ask the Court
16 to convert this case to Chapter 7, let a Chapter 7
17 trustee be appointed, investigate the assets and
18 liabilities of this debtor, and get a true
19 determination, administer the assets, and pay the
20 creditors, Your Honor.
21            MR. GOLDSTEIN:  Well, Your Honor, I was
22 prepared to address the issues today that Ms. Feinman
23 had put in her prior motion to dismiss from last week,
24 of which she has indicated that we have done the
25 filing that was requested.  This is the first that

1  I've heard from her that she feels that the debtor is
2  not being honest.  I've related the information, put
3  them into the documents and the schedules that have
4  been filed.
5              At this point I would just ask the Court
6  time to be able to sit down and get a copy of all
7  these objections that Ms. Feinman has and discuss them
8  with my client, see what his responses are.
9              I can't respond as to whether or not the
10 Fortress, Clean Star or Quick Silver and these things
11 do exist or they don't.  I just don't know at the
12 present time.
13             So what I would request, Your Honor, is, in
14 response to the original motion to dismiss that she
15 filed, in paragraph 5 she had proof of insurance,
16 which we provided the insurance for his automobile.
17 The closing of the prepetition accounts and the
18 opening of the debtor-in-possession account, he has
19 done that.  We've supplied that information to Ms.
20 Lavaughn (phonetic), who is the auditor.
21             THE COURT:  But even on the first item, the
22 U.S. Trustee is not currently listed as a notice party
23 on the policy.
24             MR. GOLDSTEIN:  I don't -- I can't respond
25 to that, Your Honor.  I don't --

1          THE COURT:  Well, if you provided the policy
2   it would have said who was getting notice, usually
3   lien holders and other parties, where specifically
4   requested.  Apparently that didn't take place.
5          I think an evidentiary hearing is
6   appropriate.  The motion is deemed amended to include
7   all the things just stated on the record.  That will
8   give you some time to prepare for it.
9          You should know that, in my view, cause
10  under 1112 can include failure to be forthright with
11  the Court in a manner that shows that the debtor has
12  an intent to use the Bankruptcy Court for a purpose
13  for which it was not intended.  And if Ms. -- and that
14  is essentially what the U.S. Trustee is suggesting
15  here.
16         A number of the things -- that was the
17  single longest presentation Ms. Feinman has ever made
18  on a motion to dismiss.  And I don't say that lightly,
19  because the U.S. Trustee is put in the position of
20  looking at Chapter 11 cases and filing such motions
21  when it's appropriate, and that's a very large number
22  of things that she believes the Court should take note
23  of.
24         A number of those matters are things that
25  you can see merely by looking at what's on file,

1  meaning, inconsistencies with statements made by the
2  debtor to the Court with regard to property that the
3  debtor owns.  Or the debtor's income, two of which I
4  pointed out at the last hearing myself, the statement
5  of financial affairs doesn't recognize income that the
6  debtor clearly had in the two years prior to the
7  filing of the case, and there has been no amendment in
8  the meantime.  So I think these are serious problems.
9            If it does turn out that there's been a
10 general failure to disclose potential assets to the
11 Court, then it seems to me the most likely result
12 would be a finding of cause and a conversion of the
13 case.  So I think you should take that seriously and
14 so advise your client.
15           MR. GOLDSTEIN:  I will.
16           THE COURT:  I have Monday the 24th of April
17 -- excuse me, February.  Are you both available?
18           MS. FEINMAN:  Your Honor, Heidi Feinman for
19 the U.S. Trustee.  I am available on the 24th.  I
20 would just prefer that it be in the morning, if
21 possible.
22           THE COURT:  Of course.
23           MR. GOLDSTEIN:  Your Honor, I don't have my
24 schedule with me, but at this point I would say fine.
25           THE COURT:  Okay.  If there's an issue, file

1  a brief motion, and if you can get with Ms. Feinman
2  ahead of time, you can, of course, contact Ms. Klopp
3  together.  But if there isn't agreement, file a brief
4  motion.
5          MR. GOLDSTEIN:  Okay.
6          THE COURT:  The 24th at 9:30.  It will be
7  set for evidentiary hearing.  Keep in mind, it's
8  amended to reflect the matters that were addressed on
9  the record.  You should contact Ms. Feinman.
10         MR. GOLDSTEIN:  I will, Your Honor.
11         THE COURT:  Thank you.
12         MS. FEINMAN:  Thank you, Your Honor.
13         (The proceedings were concluded.)
14
15
16
17
18
19
20
21
22
23
24
25

1          C E R T I F I C A T E

2

3          I, JACQUELYN ANN JONES, Court Reporter and
4  Notary Public in and for the State of Florida at
5  Large, do hereby certify that the foregoing
6  proceedings were transcribed by me from an audio
7  recording held on the date and from the place as
8  stated in the caption hereto on page 1, to the best of
9  my ability.

10

11          In witness whereof I have hereunto set my
12  hand and seal this  7th  day of  February  2014.

13

14                              _____

15                              JACQUELYN ANN JONES
16                              Commission DD 853019
17                              Expires Feb. 18, 2017